1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WINDY COVE, INC., et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>CIRCLE K STORES, INC. and DOES 1–20,<br><br>                                    Defendants. | Case No. 21-cv-1416-MMA-DEB<br><br>**ORDER RE *DAUBERT* MOTIONS AND MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 120, 125–28, 136] |
| CIRCLE K STORES, INC.,<br><br>                                    Counter-Claimant,<br><br>v.<br><br>UNIVERSITY CITY MOBIL AND SOUTH BAY, et al.,<br><br>                                    Counterclaim-Defendants. | |

Plaintiffs Windy Cove, Inc. ("Windy Cove"), HB Fuel, Inc. ("HB Fuel"), and Staffing and Management Group Inc. ("Staffing," and together with Windy Cove and HB Fuel, "Plaintiffs") bring this action against Defendant Circle K asserting claims for (1) breach of contract – breach of covenant of good faith and fair dealing; (2) declaratory relief; and (3) unfair business practices in violation of California Business and Professions Code

§ 17200, *et seq.*  *See* Doc. No. 27 ("FAC").  Defendant brings one counterclaim against all Plaintiffs and Counterclaim-Defendants Hamid Kalhor ("Kalhor") and Mohammad Bahour ("Bahour," and together with Kalhor, "Counterclaim-Defendants") for declaratory relief.  *See* Doc. No. 116 ("Amended Counterclaim").  Plaintiffs and Defendant have filed cross-motions for summary judgment and relatedly move to exclude certain opinions offered by each other's retained experts.  *See* Doc. Nos. 119, 122–24, 131, 136.[1]  The Court found this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc. No. 174.  For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment, **DENIES** Plaintiffs' motion for partial summary judgment, **DENIES** Plaintiffs' *Daubert* motion as to Dr. Umbeck, **GRANTS** Defendant's *Daubert* motion as to Mr. Maday, and **DECLINES** to rule on Defendant's *Daubert* motions as to Dr. Luna and Mr. Boedeker.

# I. BACKGROUND[2]

The following facts are not reasonably in dispute.  Prior to 2012, Plaintiff Windy Cove and Counterclaim-Defendants Kalhor (the principal of Plaintiff HB Fuel) and Bahour (the principal of Plaintiff Staffing) were ExxonMobil Oil Corporation ("ExxonMobil") franchisees that purchased Mobil-branded fuel under a fuel supply agreement with ExxonMobil.  Doc. No. 167-1 ("Defendant's Separate Statement" or "DSS") at No. 1.[3]

Defendant Circle K ("Defendant") is a wholesale distributor or "jobber" who purchases gasoline and in turn wholesales it to dealers with whom it has contracted for the supply of Mobil-branded gasoline.  Doc. No. 171-1 ("Plaintiffs' Separate Statement

---

[1] Counterclaim-Defendants oppose Defendant's motion for summary judgment but have not filed their own motion for summary judgment.  *See* Doc. No. 155.

[2] These material facts are taken from the parties' separate statements of fact and responses thereto, as well as the supporting declarations and exhibits.  Disputed material facts are discussed in further detail where relevant to the Court's analysis.  Facts that are immaterial for purposes of resolving the current motions are not included in this recitation.

[3] ExxonMobil is not a party to this lawsuit.

1   or "PSS") at No. 16.  Defendant purchases Mobil-branded gasoline from ExxonMobil for

2   subsequent sale and distribution to Plaintiffs.  PSS at No. 14.  Defendant also purchases

3   Mobil-branded gasoline from ExxonMobil that is sold at Defendant's company operated

4   gas stations ("COOPs").  *Id.*

5       Plaintiff Windy Cove purchased its station from ExxonMobil in February 2012.

6   DSS at No. 3.  Windy Cove entered into a 15-year fuel supply agreement entitled

7   "Complete Contract of Sale (Branded-Reseller)" ("Windy CCOS") with Defendant with a

8   commencement date of February 23, 2012.  *Id.* at No. 4; *see* PSS at No. 5.  On June 26,

9   2015, Kalhor signed a 15-year fuel supply agreement titled "Complete Contract of Sale

10  (Branded-Reseller)" ("Kalhor CCOS") with Defendant.  DSS at No. 15; *see* PSS at No. 6.

11  On January 28, 2014, Bahour signed a 15-year fuel supply agreement titled "Complete

12  Contract of Sale (Branded-Reseller)" ("Bahour CCOS") with Defendant.  DSS at No. 16;

13  *see* PSS at No. 7.

14      All three Gasoline Agreements[4] contain an open price fuel term which states, in

15  relevant part:

16

17      6. <u>Price.</u> The price per gallon to be paid by Purchaser shall be the Seller's price
        in effect at the time and place of delivery to dealers of the same class and in
18      the same trade area as Purchaser. … All prices charged by Seller are subject
        to the provisions of applicable law.
19

20  PSS at No. 10; *see also* Doc. No. 119-11 ("Windy Cove Commodity Schedule") at 30–31

21  ¶ 6; Doc. No. 119-27 ("Kalhor Commodity Schedule") at 2 ¶ 6; Doc. No. 119-26

22  ("Bahour Commodity Schedule") at 26 ¶ 6.

23      In August 2014, Bahour assigned his fuel supply agreement to his company,

24  Staffing.  DSS at No. 19.  In August 2015, Kalhor assigned his fuel supply agreement to

25  his affiliated company, HB Fuel.  *Id.* at No. 18.

26  _____

27

28  [4] The Court refers to the Windy CCOS, Kalhor CCOS, and Bahour CCOS as the "Gasoline
    Agreements."

Some years later, Plaintiffs began to complain to Defendant Circle K that its prices were too high.  This lawsuit followed.

## II. *DAUBERT* MOTIONS

Plaintiffs move to exclude the expert testimony of Dr. John Umbeck in its entirety. *See* Doc. No. 136.  Defendant moves to exclude portions of the expert testimony of Donald Maday.  *See* Doc. No 123.  For the reasons set forth below, the Court **DENIES** Plaintiffs' motion to exclude Dr. Umbeck's expert testimony and **GRANTS** Defendant's motion to exclude Mr. Maday's expert testimony.[5]

## A.   Legal Standard

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  As the Ninth Circuit recently explained:

> Under *Daubert* and its progeny, including *Daubert II*, a district court's inquiry into admissibility is a flexible one.  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).  In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder."  *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).

> "[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"  *Id.* at 564 (quoting *Daubert*, 509 U.S. at 597).  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the

---

[5] Because the Court does not reach the question of damages, the Court **DECLINES** to rule on the motion to exclude the expert testimony of Dr. Luna and the motion to exclude portions of the expert testimony of Mr. Boedeker.  *See* Doc. Nos. 125, 127.  Relatedly, the Court **DECLINES** to rule on Defendant's evidentiary objections to Dr. Luna's expert report.  *See* Doc. Nos. 148-2 at 2; 167-2 at 2.

knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969–70.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." *Id.* at 1044.

## B.   Plaintiffs' Motion to Exclude Dr. Umbeck's Opinions

Dr. John Umbeck has a PhD in Economics from the University of Washington and is currently a Professor of Economics in the Krannert Graduate School of Management at Purdue University. Doc. No. 136-4 ("Umbeck Report") at 1. Dr. Umbeck has conducted research in the petroleum industry and marketing of petroleum products over the past forty (40) years. *Id.* He has served as a consultant and researcher "for most major oil companies, many smaller oil companies, jobbers and chain retailers." *Id.* On October 25, 2022, Dr. Umbeck authored a report providing his opinions on "the plaintiffs' claims as put forth in their complaint dated July 12, 2021 and their Amended Complaint and certain of Circle K's defenses." *See id.* at 2, 41. On December 16, 2022, Dr. Umbeck submitted a rebuttal report to the Expert Report of Don Maday. Doc. No. 136-5 ("Umbeck Rebuttal"). On December 12, 2022, Dr. Umbeck prepared a document titled "Critique" of the expert report of Barbara Luna. Doc. No. 136-6 ("Umbeck Critique").

Plaintiffs move to exclude the opinions of Dr. Umbeck in their entirety or at least in part. Doc. No. 136-1 at 5. Broadly, Plaintiffs argue that Dr. Umbeck's opinions rely on an unreliable methodology and incorrect legal standards. *See generally* Doc. No. 136-1.

Dr. Umbeck opines "that [Defendant]'s [Dealer Buying Price] during the relevant time period was "in the range" of the [Dealer Buying Price] offered by the other major brand suppliers in LA and SD and OC. [Defendant] has passed the test for 'commercially reasonable' pricing." Umbeck Report at 11. He bases this opinion on an economic analysis "compar[ing] (a) the wholesale prices charged retail dealers in Los Angeles, San Diego and Orange Counties by other suppliers of major branded gasoline to (b) the wholesale prices Plaintiffs paid to Circle K for Mobil branded fuel." *Id.* at 5. He obtained the prices from Lundberg Survey Inc., which he states, "surveys retail dealers of each major brand daily to obtain the wholesale prices paid at their stations." *Id*. Dr. Umbeck concludes "[t]here is no factual support for the Plaintiffs' claim of commercially unreasonable, excessive, or unfair pricing, using 'the range' or 'in the ballpark' as a measure of what is commercially unreasonable." *Id.* at 11.

As an initial matter, Plaintiffs challenge Dr. Umbeck's qualifications, urging that "Dr. Umbeck was active 20 years and more ago, but not currently and demonstrated no real understanding or knowledge of the petroleum industry relevant to the time period relevant to this action, 2017 to present." Doc. No. 136-1 at 11. However, Defendant offers evidence that Dr. Umbeck remains active as an expert in the petroleum industry. Doc. No. 151 at 6 (citing Doc. No. 151-4 ("Umbeck Depo."), Vol. 1 at 33:8–34:19, 35:17–22, 41:24–42:24, 43:18–44:11, 46:20–47:3, 48:1–11, 49:2–7). Additionally, Plaintiffs provide no evidence that suggests Dr. Umbeck's considerable experience is no longer relevant. The Court is satisfied that Dr. Umbeck is qualified to testify as an expert in this case.

Plaintiffs next argue that Dr. Umbeck's opinions are unreliable because he relies on Lundberg Surveys. Doc. No. 136-1 at 11–12. The Court is not persuaded. In his report, Dr. Umbeck states "Lundberg Survey Inc. surveys retail dealers of each major brand daily to obtain the wholesale prices paid at their stations. Lundberg calls this the "Dealer Buying Price" (DBP). I have worked with Lundberg Survey for 40 years and have relied on its data for my own academic research." Umbeck Report at 5.

Dr. Umbeck opines that in his decades of experience "many if not most major oil companies subscribe to Lundberg in order to learn the DBP charged by their competitors (as competitors do not voluntarily share their prices with each other). *Id.* at 6. Dr. Umbeck further opines that "[t]o my knowledge there is no other company that lists and compiles DBPs other than Lundberg and accordingly it is relied upon by the industry and by pricing experts generally in court cases that address DBPs." *Id.* Plaintiffs' expert Stefan Boedeker stated in his deposition that his firm also uses Lundberg data. Doc. No. 151-7 at 48:11–49:15. ("Boedeker Depo."). Further, Defendant submits a sworn declaration from Trilby Lundberg, the President of Lundberg Survey, Inc., which explains Lundberg Survey's method of data collection and that "Lundberg is an independent market research company which researches the U.S. petroleum and related industries [and] provides statistical reports and publications to the oil industry and other users. Doc. No. 119-38 ("Lundberg Decl."). There is no authority for the position that Dr. Umbeck's opinions are unreliable because he relies on Lundberg Surveys. Instead, Plaintiffs' arguments go to the weight of this evidence. The Court finds no reason to exclude Dr. Umbeck's opinion based on Dr. Umbeck's reliance on Lundberg Surveys.

Plaintiffs next argue that Dr. Umbeck's opinions should be excluded because he fails to define what constitutes "in the range." Doc. No. 136-1 at 14–15. However, in his report, Dr. Umbeck states Circle K's prices are "in the range" and "commercially reasonable," concluding that Defendant's prices and were "not the highest nor are they the lowest." Doc. No. 136-4 at 10. The Court finds this is not a basis to exclude Dr. Umbeck's opinion.

Plaintiffs next argue that Dr. Umbeck did not include other suppliers such as █████████████ in his analysis. Doc. No. 136-1 at 11–17. Plaintiffs' argument is based on Plaintiffs' legal theory of commercial unreasonableness—i.e., that "in the range" means "competitive with other wholesalers . . . being in the 'middle of the pack' of all [gasoline] wholesalers in the area." *See id.* at 15 (emphasis omitted). However, as explained below *infra* Section III.B., this is not the appropriate standard. The Court

1    concludes that Dr. Umbeck's opinions regarding commercial reasonableness do not rest

2    on an erroneous legal standard.  Accordingly, this is not a basis to exclude Dr. Umbeck's

3    opinion.

4         Finally, Plaintiffs argue that Dr. Umbeck's "rebuttal reports rely in their core upon

5    the same errors in analysis as those discussed above" and therefore the "report should be

6    excluded for the same reasons."  Doc. No. 136-1 at 22.  Because the Court has not found

7    Dr. Umbeck's opinions rely on an unreliable methodology or incorrect legal standards, it

8    similarly concludes there is no basis to exclude Dr. Umbeck's rebuttal reports.

9         In sum, the Court is satisfied that Dr. Umbeck's opinions "rest[] on a reliable

10   foundation and a[re] relevant to the task at hand.'"  *Primiano*, 598 F.3d at 564 (quoting

11   Daubert, 509 U.S. at 597).  The Court therefore **DENIES** Plaintiffs' motion to exclude

12   the opinions and testimony of Dr. Umbeck.

13   **C.    Defendant's Motion to Partially Exclude Mr. Maday's Opinions**

14        As an initial matter, the parties do not dispute that Donald Maday has considerable

15   experience working in the petroleum industry, nor has Defendant moved to exclude

16   Mr. Maday's opinions on the ground that he is not qualified.  However, Defendant moves

17   to exclude some of Mr. Maday's opinions on the following grounds: (1) Mr. Maday's

18   opinion that Circle K's pricing formula is not commercially reasonable is inconsistent

19   with the controlling legal standard and improper expert opinion; (2) Mr. Maday's opinion

20   that Circle K's pricing is designed to run the dealers out of business is irrelevant and

21   improper expert testimony; (3) Mr. Maday's opinions that Circle K's pricing is

22   discriminatory and about Circle K's cost of goods are irrelevant and improper expert

23   testimony; (4) Mr. Maday's opinion that Circle K's wholesale prices are not

24   commercially reasonable is based on an incorrect legal standard and is improper expert

25   opinion; and (5) Mr. Maday's opinions that Circle K's retail pricing at its own company

26   owned and operated property/station ("COOP") is commercially unreasonable and

27   "squeezes" and harms the dealers are irrelevant to the Dealers' claims, inconsistent with

28   the controlling legal standard, and are improper expert testimony.  Doc. No. 123-1.

1      Mr. Maday's opinions that Defendant's pricing formula is not commercially

2  reasonable and that Defendant's wholesale prices are not commercially reasonable must

3  be excluded.  Mr. Maday's opinions as to the reasonableness of Circle K's price and

4  pricing formula are based on Plaintiffs' legal theory of commercial unreasonableness:

5  that pricing methodology is relevant to an objective bad faith inquiry.  Plaintiffs do not

6  argue otherwise.  *See* Doc. No. 159.  However, as explained below *infra* Section III.B.2,

7  this is not the standard.  Relatedly, Mr. Maday's opinion that Defendant's pricing is

8  designed to run the dealers out of business is irrelevant given that—by Plaintiffs' own

9  concession—the relevant inquiry is objective, and not subjective, bad faith.  *See infra*

10  Section III.B.  "Expert testimony that is based on an erroneous understanding or

11  application of the law cannot meet the requirements of Rule 702 because it cannot

12  logically assist the trier of fact."  *In re Katz Interactive Call Processing Pat. Litig.*, No.

13  07-2196 RGK (FFMX), 2009 WL 10676152, at *2 (C.D. Cal. Mar. 11, 2009); *see also*

14  *Olin Corp. v. Lamorak Ins. Co.*, No. 84-CV-1968 (JSR), 2018 U.S. Dist. LEXIS 65446,

15  2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018) ("Expert testimony also should be

16  excluded when it applies the wrong legal standard.").  Similarly, Mr. Maday's opinions

17  that Circle K's pricing is discriminatory and about Circle K's cost of goods—including

18  the price Circle K pays for fuel and Circle K's alleged "transfer price" to its own

19  COOPs—is subject to exclusion.  As noted above, Plaintiffs' price discrimination theory

20  fails as a matter of law for the reasons set forth *infra* Section III.B.2, and as Magistrate

21  Judge Butcher previously ruled in the context of a discovery dispute, "The price Circle K

22  pays for the fuel sold to Plaintiffs is not relevant to [ ] analysis [under § 2305(2)], and is

23  not necessary for Plaintiffs to prepare their case for trial."  Doc. No. 56 at 8.

24      Finally, Defendant urges that Mr. Maday's opinion that Circle K's retail pricing at

25  its own COOP is commercially unreasonable and "squeezes" and harms the dealers

26  should be excluded.  *See* Doc. No. 123-1 at 16–18.  The Court agrees.  As described in

27  more detail *infra* Section III.B, the relevant inquiry is whether Circle K's prices fall

28  within the range of prices charged by other competitors.

In sum, the Court finds that while Mr. Maday is qualified to testify as a petroleum industry expert, his testimony as to the above is impermissible. Accordingly, the Court finds the proffered opinions inadmissible and **GRANTS** Defendant's *Daubert* motion.

### III. SUMMARY JUDGMENT

**A.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56,

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.*

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)). Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

Where cross-motions for summary judgment are at issue, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (citations omitted). That said, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526,532 (9th Cir. 2011). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B. Discussion

### 1. Evidentiary Issues

Defendant submits a number of objections to Plaintiffs' evidence submitted both in support of Plaintiffs' motion for summary judgment and in opposition to Defendant's motion for summary judgment. *See* Doc. Nos. 148-2; 167-2. Plaintiffs did not respond to Defendant's objections.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c). However, courts will consider evidence with content that would be admissible at trial even if the form of the evidence would be inadmissible. *See Celotex Corp.*, 477 U.S. at 324; *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (admitting a diary in considering summary judgment where its contents were within the author's personal knowledge and could be admitted in several ways at trial despite a hearsay objection). Authentication is a "condition precedent to admissibility." *Orr*, 285 F.3d at 773. Documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure 56(c)] and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* at 774 (emphasis added) (quotation omitted). Foundation does not require personal knowledge where it can be based on the methods permitted by Federal Rules of

Evidence 901(b) or 902.  *Id.*  Furthermore, "'objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself' and unnecessary to consider here." *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)).

Accordingly, barring the exceptions below, the Court does not reach any objections on the grounds that the evidence is irrelevant, speculative, that it constitutes hearsay or inadmissible lay opinion, that it constitutes an improper legal conclusion, or that there is a lack personal knowledge.  *See Burch*, 433 F. Supp. 2d at 1122.  This disposes of the majority of Defendant's objections.  The Court addresses the remaining objections below.

In its tenth objection, Defendant argues that paragraph four of Adeeb Brikho's declaration, and the ▮▮▮▮▮▮▮▮▮▮ invoices attached to Plaintiffs' motion for summary judgment as Exhibit 19, should be excluded based upon Federal Rule of Evidence 602 (personal knowledge) and Federal Rule of Evidence 901(b) (authentication).  *See* Doc. No. 148-2 at 5–6; Doc. No. 167-2 at 5–6.

In his declaration, Brikho states:

> 4.      Attached to the motion as "Exhibit 19" are true and correct copies of Circle K invoices that were sent to S&G Zavarao Inc., along with multiple ▮▮▮▮▮▮▮▮▮▮ that I was provided copies of from Sam Zavaro of Zavaro Investments, Inc.  S&G Zavaro was previously named as a party to this action but has since been dismissed. During various times that I met with Michael Bohnert to discuss my concerns about Circle K's pricing, and with regards to issues that I had at my Windy Cove station, I would show and provide Mr. Bohnert with copies of these ▮▮▮▮▮▮▮▮ invoices showing that ▮▮▮▮▮▮▮▮▮▮ in the prices charged by Circle K to supply my Windy Cove station to the prices that ▮▮▮▮▮ was charging for the same Mobil branded gasoline.

*See* Doc. No. 128-5 ("Brikho Decl.") ¶¶ 3–4 (referring to Doc. No. 131-16 ("Circle K and ▮▮▮▮▮▮ Invoices") Ex. 19).  Exhibit 19 includes invoices from Defendant and

from ███████ to S&G Zavaro. Co.  Doc. No. 131-16.  Defendant argues that Brikho lacks personal knowledge of, and cannot properly authenticate, third-party invoices.  *See* Doc. No. 148-2 at 5–6; Doc. No. 167-2 at 5–6.

Based on the evidence before the Court, Brikho does not work for ███████ *See* Brikho Decl. ¶ 2 (stating that Brikho is "an owner and officer of PTL5 Market, Inc., which is a family owned and operated gasoline station[.]").  Accordingly, the Court cannot say Brikho has the requisite personal knowledge to authenticate ███████ Co.'s invoices or the pricing of any company outside of PTL5 Market, Inc.  Moreover, the Court notes that even the declaration Plaintiffs offer from ███████, the "Chief Executive Officer for ███████ Co.," also does not purport to authenticate the ███████ Co. invoices included as part of Exhibit 19.  Doc. No. 155-13.

At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial, but the content or substance of the evidence must be admissible."  *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 999 (10th Cir. 2019) (citations and quotation marks omitted).  "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form."  *Id.* at 999 n.15 (citations and quotation marks omitted).  Plaintiffs have not done so here.  The Court therefore **SUSTAINS** Defendant's objections as to the Brikho's Declaration at paragraph 4 and Exhibit 19.

In its eleventh objection, Defendant argues that Plaintiffs' Exhibit 21, a May 24, 2021 email to Circle K's counsel, should be excluded based on Federal Rule of Evidence 408 because it contains improper evidence of compromise offers and negotiations.  Doc. No. 148-2 at 6 (citing Doc. No. 155-17 at 12–16, Ex. 21); Doc. No. 167-2 at 6 (citing same).  The Court agrees and **SUSTAINS** the objection.  *See* Fed. R. Evid. 408 advisory committee's note (2006 amend.) ("Rule 408 excludes compromise evidence even when a party seeks to admit its own settlement offer or statements made in settlement negotiations.");  *see also Polk v. BP Amoco Chem. Co.*, 586 F. Supp. 2d 619, 621–22 (D.S.C. 2008) (concluding that a letter from the defendant outlining the defendant's

1   position was covered by Rule 408, even though the plaintiff never made any settlement

2   offer of his own and never expressed any willingness to settle for less than the full

3   amount of his claim).

4         Finally, in its twelfth objection, Defendant argues that paragraphs 2–4 of the

5   Cohen Declaration as well as Tables 1–5 in Plaintiffs' opposition brief, should be

6   excluded based on Federal Rule of Evidence 602 (personal knowledge) and Federal Rule

7   of Evidence 901(b) (authentication).  Doc. No. 167-2 at 6.  In his declaration, Stuart

8   Cohen, an attorney of record in this case, states:

9

10       2. Attached to as "Exhibit 36" to the evidence in support of the Dealers'
    Opposition are true and correct copy of various Lundberg Survey reports that

11       support Tables 1 and 2 in the Dealers' opposition for July 1, 2019, September
    20, 2019, February 14, 2020, October 27, 2020, August 2, 2021, and

12       September 7, 2021, and December 31, 2021.

13

14       3. On page 27 of the opposition is Table 3 which is a comparison of ▓▓▓▓
    ▓▓▓▓ and Average Rack Prices taken from data obtained for daily OPIS

15       reports that our office obtained from OPIS.  I randomly selected dates from
    the daily OPIS reports that our office obtained from OPIS as part of our OPIS

16       subscription. I extracted the data from the OPIS reports on the dates reflected
    and copied the data into Table 3 that I created.  To the best of my knowledge,

17       I copied the data accurately from the daily OPIS report into Table 3.  Attached

18       to the evidence as "Exhibit 31" in support of the Dealers' Opposition are true
    and correct copies of the daily OPIS pricing reports that our office received

19       from OPIS.

20

21       4. On page 28 of the opposition are Tables 4 and Table 5, which are
    comparisons of Circle K's prices to ▓▓▓▓ prices in San Diego County for

22       regular unleaded before taxes, and ▓▓▓▓▓▓ prices in San Diego County

23       for regular unleaded before taxes.  The data was taken from invoices and price
    notifications that we received from our clients.  I randomly selected dates from

24       the documents, which are attached as Exhibits 19 and 28 to the opposition.

25       The data extracted from the documents was copied into Tables 4 and 5 that I
    created.  To the best of my knowledge, I copied the data accurately from the

26       invoices and price notifications into Tables 4 and 5.

27

28   Doc. No. 153-3 ("Cohen Decl.") ¶¶ 2–4 (referring to Doc. No. 155-16, Ex. 19; Doc.

No. 155-23, Ex. 28; Doc. No. 155-24, Ex. 31; Doc. No. 155-27, Ex. 36).

Statements in legal memoranda are not evidence. *Estrella v. Brandt*, 682 F.2d 814, 819–20 (9th Cir. 1982). Similarly, Mr. Cohen's efforts to lay the foundation for Exhibits 19, 28, 31, and 36, and his explanation for the contents of Tables 1–5 are not evidence; Mr. Cohen is an attorney in this case and not a percipient witness. *See* Cohen Decl. ¶¶ 2–4. Accordingly, the Court **OVERRULES** Defendant's objection. The Court notes it does not consider the ███████ Co. invoices included in Exhibit 19 because the Court ~~sustains the objection to that exhibit *supra*.~~[6]

2.     *Claim 1*

The parties agree that California Commercial Code § 2305(2) governs Plaintiffs' first cause of action for "Breach of Contract – Breach of Covenant of Good Faith and Fair Dealing." *See* Doc. No. 131-1 at 18, 25–28; Doc. No. 119 at 17. Section 2305 provides that parties "can conclude a contract for sale even though the price is not settled." Cal. Comm. Code § 2305(1). Pursuant to § 2305(2), "[a] price to be fixed by the seller or by the buyer means a price for him to fix in good faith." Cal. Comm. Code § 2305(2). "Open-price-term contracts are commonly used in the gasoline refining and marketing industry due to price volatility." *Two Bros. Distrib. v. Valero Mktg & Supply Co.*, 270 F. Supp. 3d 1112, 1120 (Ariz. 2017) (quoting *Shell Oil Co. v. HRN, Inc.*, 144 S.W.3d 429, 431 (Tex. 2004) (alteration omitted).

Undisputedly, all three Gasoline Agreements contain an open price fuel term. In particular, the Gasoline Agreements contain the following clause regarding the open price fuel term:

> 6. Price. The price per gallon to be paid by Purchaser shall be the Seller's price in effect at the time and place of delivery to dealers of the same class and in

---

[6] Exhibit 19 submitted in support of Plaintiffs' motion for summary judgment is identical to Exhibit 19 submitted in support of Plaintiffs' opposition to Defendant's motion for summary judgment. *Compare* Doc. No. 131-16 *with* Doc. No. 155-16.

the same trade area as Purchaser. . . .

PSS at No. 10; *see also* Windy Cove Commodity Schedule at 30–31 ¶ 6; Kalhor Commodity Schedule at 2 ¶ 6; Bahour Commodity Schedule at 26 ¶ 6.

Official Comment No. 3 to of the Uniform Commercial Code § 2305 states:

> Subsection (2), dealing with the situation where the price is to be fixed by one party rejects the uncommercial idea that an agreement that the seller may fix the price means that he may fix any price he may wish by the express qualification that the price so fixed must be fixed in good faith. Good faith includes observance of reasonable commercial standards of fair dealing in the trade if the party is a merchant. (Section 2–103). But in the normal case a "posted price" or a future seller's or buyer's "given price," "price in effect," "market price," or the like satisfies the good faith requirement.

UCC § 2305 cmt. n.3. The last sentence of this comment creates a safe harbor. *See Two Bros. Distrib. Inc.*, 270 F. Supp. 3d at 1123. In the "normal case," evidence that a seller charged the regularly posted price will place the seller in the safe harbor and satisfy the requirement of good faith. *Id.* at 1123 (citing U.C.C. § 2-305 cmt. n.3); *see also Flagler Automotive, Inc. v. Exxon Mobil Corp.*, 582 F. Supp. 2d 367, 374 (E.D.N.Y. 2008) ("Stated differently, comment 3 interprets the UCC to create a "price in effect presumption"—i.e., a presumption that in the 'normal case,' the 'price in effect' is in good faith as a matter of law."). The UCC does not define the "normal case" as contemplated by comment 3. Courts have split on what is required to overcome the presumption of good faith created by the safe harbor:

> On the majority side of the split, a claimant may push a case out of the safe harbor only by showing that a posted price was set with objective bad faith — that the price was either discriminatory or not commercially reasonable. *See HRN, Inc.*, 144 S.W.3d at 434 ("the majority of decisions suggest that a commercially reasonable [fuel] price, that is, one within the range of [fuel] prices charged by other refiners in the market, is a good faith price under section 2.305 absent some evidence that the refiner used pricing to discriminate among its purchasers.") (citing cases). A minority of courts holds that a case falls outside the safe harbor if a claimant shows the posted

price was set with subjective bad faith in the form of improper motive. *See Marcoux v. Shell Oil Prods. Co. LLC*, 524 F.3d 33 (1st Cir. 2008*), aff'd in part, rev'd in part and remanded sub nom. Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC*, 559 U.S. 175, 130 S. Ct. 1251, 176 L. Ed. 2d 36 (2010) (applying Massachusetts law); *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1308 (S.D. Fla. 1999) (*Allapattah* II) (applying Florida law).

*Two Bros. Distrib.*, 270 F. Supp. 3d at 1123.

Here, the parties agree that an objective bad faith standard, as recognized by the majority of courts, applies to the instant dispute. *See* Doc. No. 155 at 18; Doc. No. 119 at 18–24. However, the parties dispute what evidence is appropriate under this standard, and whether this is a "normal case" such that the price set by Defendant Circle K enjoys a presumption that the good faith requirement is satisfied. Defendant claims that its prices were commercially reasonable and non-discriminatory. *See* Doc. No. 119-1 at 17–25. Plaintiffs argue that Defendant's prices, pricing methodology, and price discrimination take this case outside of the "normal case," and that the safe harbor provision of Comment 3 therefore does not apply. *See* Doc. No. 131-1 at 18–27.

The parties have offered, and the Court has found, little relevant authority from the Ninth Circuit or California state courts that addresses good faith in price setting pursuant to an open price term contract. California has adopted UCC § 2-305(2) without amendments. *Compare* Cal. Com. Code § 2305(2) *with* UCC § 2-305(2). Other states have also adopted UCC § 2305(2) without amendments. Accordingly, the Court looks to other jurisdictions that have adopted UCC § 2305 for guidance. *See, e.g.*, A.R.S. § 47-2305 (Arizona); M.C.L.A. § 440.2305 (Michigan); N.J. Stat § 12A:2-305 (New Jersey); S.D. Codified Laws § 57A-2-305(2) (South Dakota); Tex. Bus. & Com. Code Ann. § 2.305 (Texas).

Defendant offers evidence that the price term for Plaintiffs was the "price in effect at the time and place of delivery to dealers of the same class and in the same trade area as Purchaser." *See* DSS at No. 7 (citing Doc. 119-47 ¶ 11 ("Dunten Decl."); Doc. 119-49 ¶ 16 ("Fry Decl.")); DSS at No. 10 (citing Dunten Decl. ¶ 12; Fry Decl. ¶ 16). Plaintiffs

purport to dispute these facts on the basis that these facts "lack[ ] foundation" and "assume[] facts not in evidence."  DSS at Nos. 7, 10.  However, in light of the discussion below regarding the bases of Ms. Fry's and Ms. Dunten's assertions regarding Circle K's pricing practices, and because Plaintiffs have otherwise not objected to Ms. Fry's or Ms. Dunten's declarations, the Court concludes that Plaintiffs do not provide a valid basis for disputing these facts.

In her declaration, Stephanie Fry states, "[s]ince 2017, I have been the Director of Fuels for the West Coast Business Unit of Circle K. Stores Inc. [,]" that "[f]rom 2007 through 2017, I worked for Circle K in the West Coast Business Unit as a Fuel Analyst and Fuel Manager", and that "[a]mong other things, from 2011 to the present my team and I set Circle K's price for wholesale fuel sales in Southern California."  Fry Decl. ¶¶ 2–3.  She also states that "[d]uring all times relevant to the allegations in this lawsuit, Circle K charged all of its independent dealers in Los Angeles ("LA") and Orange County, including Mr. Kalhor and Mr. Bahour and their affiliates, the same wholesale price for fuel.  Circle K also charged all of its independent dealers in San Diego County, including Windy Cove, the same wholesale price for fuel."  Id. ¶ 16.  Additionally, she states that "Circle K also keeps a database that electronically records all wholesale prices Circle K charges to its dealers (including Plaintiffs)", which are attached as Exhibits 39, 40, and 41 to Defendant's motion for summary judgment.  Id. ¶ 15.  Similarly, in her declaration, Gena Dunten states that she is "currently the Director of North America Facilities Category Management at Circle K Stores Inc. ("Circle K")[,]" and that "[p]reviously, from November 14, 2011 to April 30, 2020, I held the titles of (a) Manager-Administrator at National Wholesale Fuels ("NWF"), which is a division of Circle K, and later (b) Director of Programs & Administration for NWF[,which] is and was responsible for the administration of Circle K's wholesale fuel sales contracts in the United States."  Dunten Decl. ¶ 2.  Ms. Dunten also states that she "previously reviewed the contracts and records for Plaintiffs Staffing and Management Group Inc. [] (and its predecessor in interest Mohammad Bahour [], HB Fuel, Inc. [] (and its predecessor in

interest Hamid Kalhor [], and Windy Cove, Inc. [] regarding their related stations and agreements" and has personal knowledge of the following:

> 11.    Windy Cove began to purchase Mobil branded fuel from Circle K in February 2012. Circle K delivered the fuel and charged Windy Cove the standard delivered price for fuel that Circle K charged to all of its other dealers in San Diego County for Mobil branded fuel.  Windy Cove paid Circle K for the fuel.
>
> …
>
> 12.    In June 2013, before Mr. Bahour (Staffing's principal) and Mr. Kalhor (HB Fuel's principal) purchased their stations, Circle K began to sell Mobil branded fuel to both franchisees (as ExxonMobil was no longer doing so). Circle K has continued to sell Mobil branded fuel to those dealers, and later to their related entities Staffing and HB Fuel, to the present day.  Circle K delivered the fuel and charged Mr. Bahour and Mr. Kalhor (or their related entities, Staffing and HB Fuel, respectively) the standard price for delivered fuel that Circle K charged to all of its other dealers in Los Angeles and Orange counties.  Mr. Bahour and Mr. Kalhor paid Circle K for the fuel Circle K delivered. . . .

*Id.* ¶¶ 6, 11–12.  Plaintiffs provide no evidence to the contrary.  The Court concludes no genuine dispute exists over whether the price term for Plaintiff was the "price in effect." *See* Cal. Comm. Code 2305(2).

Accordingly, Defendant Circle K is entitled to a presumption that its prices were set in good faith.  *See Citgo Petroleum Corp. v. U.S. Lubes, LLC*, 2014 WL 3887773, at *4 (E.D. Penn. 2014) (finding that because there was no dispute that the defendant charged the plaintiff its price in effect on the date of shipment, the defendant's price was presumed to be a good faith price).  The question, then, is whether there is evidence that Defendant Circle K's prices were not "commercially reasonable" or that Defendant engaged in price discrimination, such that Plaintiff can rebut the safe harbor presumption that Defendant's prices were set in good faith.  Plaintiffs challenge the presumption on both grounds.  *See* Doc. No. 131-1.

### i. *Commercially Reasonable Prices*

As to whether Defendant Circle K's prices were commercially reasonable,

[A] plaintiff bears the burden of establishing that a seller defendant set a commercially unreasonable price term. *Tom-Lin Enters. v. Sunoco, Inc.*, 349 F.3d 277, 282 (6th Cir. 2003). In a Section 2-305 action, evidence of how the seller defendant's prices compared with other sellers in the same market is critical to determining commercial unreasonableness. *Schwartz v. Sun Co.*, 276 F.3d 900, 905 (6th Cir. Mich. 2002). A plaintiff who fails to produce such evidence has failed to establish a prima facie case on the point. *Id.* In order to survive summary judgment then, Ashwood must produce evidence of Exxon's competitor's prices in the relevant market. *See id.*; *Atl. Autocare, Inc. v. Shell Oil Prods. Co. LLC*, 605 F. Supp. 2d 463, 472 (S.D.N.Y. 2009).

*JOC Inc. v. ExxonMobil Oil Corporation*, No. 08-5344 (SRC), 2013 WL 12159044, at *19 (D.N.J. Jan. 22, 2013).

Plaintiff argues that "[w]here there is evidence that those in same class of trade are pricing differently (here wholesale distributors) from [Defendant]'s pricing formula, then [Defendant]'s practices do not fit within the "normal case" requirement for application of the "safe harbor." Doc. No. 131-1 at 25 (citations omitted). Defendant argues that the relevant inquiry is whether Defendant's prices fall within the range of prices charged by other distributors, *see* Doc. No. 119 at 19 (citation omitted), and not the manner in which the prices charged were determined, *see* Doc. No. 167 at 4–6.

As noted above, Plaintiffs acknowledge that an objective bad faith standard applies to the instant dispute. Doc. No. 155 at 18. Nevertheless, Plaintiffs urge that Defendant's Circle K's pricing methodology is relevant to a commercial reasonableness inquiry under an objective bad faith standard. *See* Doc. No. 131-1 at 18–25. As support, Plaintiffs cite *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1308 (S.D. Fla. 1999); *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1348–49 (Kans. 1996), *aff'd*, 145 F.3d 1347 (10th Cir. 1998); *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 290 (4th Cir. 1998); *Bapasn, Inc. v. Equilon Enterprises*, 2014 WL 4087227, at *3 (N.D. Ill. Aug. 19, 2014); *ConSeal Int'l, Inc. v. Neogen Corp*, 488 F.Supp.3d 1257, 1277 (S.D. Fla. 2020).

Outside of *Allapattah*, these cases do not support Plaintiffs' argument that pricing methodology is relevant to an objective bad faith inquiry.  And *Allapattah* considered pricing methodology in the context of a *subjective* bad faith analysis under UCC § 2305. *See Allapattah Servs.*, 61 F. Supp. 2d. at 1324 (concluding there was a triable issue of fact as to whether Exxon's prices were commercially reasonable because "Plaintiffs specifically claim that Exxon exercised bad faith based on Exxon's plan to double charge for the purpose of running the "non-keeper" dealers out of business.  Courts have considered whether a contracting party implemented a policy as an underhanded attempt to drive an individual dealer out of business to determine if that party acted in bad faith contrary to well-established tenets of contract law").

Allowing pricing methodology to form the basis of an objective bad faith inquiry would "eviscerate the safe harbor in any action in which the plaintiff alleges circumstantial evidence of an improper motive, leading to drawn-out litigation 'even if the prices ultimately charged were undisputedly within the range of those charged throughout the industry.'"  *See Casserlie v. Shell Oil Co.*, 121 Ohio St. 3d 55, 59 (2009) (quoting *HRN*, 144 S.W.3d at 435; then citing Berry, Byers, & Oates, Open Price Agreements: Good Faith Pricing in the Franchise Relationship (2007), 27 Franchise L.J. 45, 49)).  The Court finds the Eleventh Circuit's unpublished opinion in *Autry Petroleum Co. v. BP Products North America, Inc.*, 334 Fed. App'x 982 (11th Cir. 2009) instructive:

> Although the UCC provides no definition of the "normal case" contemplated by comment 3, we accept that the draftsmen of the UCC intended that the safe harbor created by the normal case good faith presumption apply broadly lest every price set pursuant to an open-price term be vulnerable to attack and subject to litigation.  *See Walter D. Malcolm*, The Proposed Commercial Code: A Report on Developments from May 1950 through February 1951, 6 Bus. Law. 113, 185–186 (1950–51).
>
> The draftsmen sought to avoid imposing on the open-price-term setter the burden of establishing the reasonableness of the price set; the open-price-term provision was crafted to insulate posted prices and the like from reasonableness review provided the price imposed was not discriminatory.

*See id.*; *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1346–47 (D. Kan. 1996) ("It is abundantly clear . . . that the chief concern of the UCC Drafting Committee in adopting § 2–305(2) was to prevent discriminatory pricing—i.e., to prevent suppliers from charging two buyers with identical pricing provisions . . . different prices for arbitrary or discriminatory reasons.") (emphasis in original).

*Autry Petroleum Co. v. BP Products North America, Inc.*, 334 Fed. App'x 982, 985 (11th Cir. 2009). With this in mind, the Court concludes that pricing methodology is not relevant to an objective bad faith inquiry; the relevant inquiry for assessing commercial reasonableness under § 2305(2) is whether Circle K's prices fall in the range of prices charged by other competitors.

The next question, then, is what competitors constitute the appropriate comparators to Defendant Circle K. Plaintiffs urge that only those in the "same class of trade" as Defendant—that is, other distributors—should be considered in price comparisons. *See* Doc. No. 131-1 at 7. Defendant argues that the appropriate range includes all sellers in the market, including wholesale distributors and refiners. *See* Doc. No. 119 at 20–25. Even assuming *arguendo* that the appropriate comparison is only between Defendant's prices and the prices of other wholesalers, Plaintiffs' evidence regarding Defendant Circle K's prices and the prices of other wholesalers is not sufficient to create a genuine issue of material fact.

As to whether Defendant's prices were "in the range" of other competitor's prices, Plaintiffs rely on *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 290 (4th Cir. 1998) for the proposition that "in the range" means "competitive with other wholesalers . . . being in the 'middle of the pack' of all [gasoline] wholesalers in the area." Doc. No. 131-1 at 21. But nowhere did the court in *Havird* state that pricing must be "in the middle of the pack" in order to satisfy the "in the range" standard. And Plaintiffs do not offer, and the Court has not found, any case extrapolating that rule from *Havird*. Nor has the Court found any other case law that supports Plaintiffs' "middle of the pack" rule statement.

The Court has scoured case law regarding open price term contracts and has found

no authority purporting to offer a precise definition of what "in the range" means in the context of a UCC § 2-305 commercial reasonableness inquiry.  This is unsurprising given that "in the range" is part of a reasonableness standard, which is, by design, a fact-intensive inquiry specific to each case.  In any event, the Court is satisfied that Plaintiffs' proposed definition is too narrowly drawn.  The Court follows the majority of decisions, which suggest a commercially reasonable price is one within the range of prices charged by other competitors in the relevant market.  *See HRN, Inc.*, 144 S.W. 3d at 434 ("[The majority of decisions suggest that a commercially reasonable DTW price, that is, one within the range of DTW prices charged by other refiners in the market, is a good faith price under section 2.305 absent some evidence that the refiner used pricing to discriminate among its purchasers.") (first citing *Tom-Lin Enters., Inc. v. Sunoco, Inc.*, 349 F.3d 277, 281–83 (6th Cir. 2003); then citing *Havird Oil Co.*, 149 F.3d at 290–91; *Richard Short Oil Co. v. Texaco, Inc.*, 799 F.2d 415, 422 (8th Cir. 1986); then citing *Wayman*, 923 F. Supp. at 1332, *aff'd mem.*, 145 F.3d 1347 (10th Cir. 1998); then citing *T.A.M., Inc. v. Gulf Oil Corp.*, 553 F. Supp. 499, 509 (E.D. Pa. 1982)); then citing *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 465 S.E.2d 84, 86 (S.C. 1995)); *see also HRN*, 144 S.W.3d at 437 ("Good faith under [U.C.C. § 2-305] does not mandate a competitive price for each individual Dealer, nor could it.  The competitive circumstances of each Dealer in the same pricing zone may vary from station to station, and yet Shell must treat them all the same."); *Citgo Petroleum Corp.*, 2014 WL 3887773, at *4 (citing *HRN, Inc.*, 144 S.W.3d at 437) ("Evidence of difficulty competing is not sufficient to show that a price is not within the range of commercially reasonable prices.").

With this in mind, the Court turns to the evidence offered by Plaintiffs.  In this Section 2305 action, Plaintiffs bear the burden of establishing that Defendant set a commercially unreasonable price term.  *JOC Inc.*, 2013 WL 12159044, at *19 (*citing Tom-Lin Enters.*, 349 F.3d at 282).  "In order to survive summary judgment then, [plaintiffs] must produce evidence of [defendant's] competitor's prices in the relevant market.  *JOC Inc.*, 2013 WL 12159044, at *19 (first citing *Schwartz v. Sun Co.*, 276 F.3d

900, 905 (6th Cir. 2002); then citing *Atl. Autocare, Inc. v. Shell Oil Prods. Co. LLC*, 605 F. Supp. 2d 463, 472 (S.D.N.Y. 2009)).  Plaintiffs have not done so here.

Plaintiffs point to the following: "[a]s part of her analysis, Ms. Luna compared the prices of ███ to the prices of [Defendant], and also compared the prices of ███████ to the prices of [Defendant]" and concluded that Defendant's "prices were around ███ ███ per gallon."  Doc. No. 131-1 at 22–24 (citing PSS at No. 61–63 (itself citing Doc. No. Doc. No. 131-19 ("Luna Report")).[7]  Plaintiffs also urge, regarding the tables prepared by Plaintiffs' counsel as part of the brief in opposition to Defendant's motion for summary judgment, "As shown in Tables 1 through 5, whether comparing [Defendant]'s prices to all majors, average rack prices in OPIS, or the prices of other Mobil Fuel distributors, [Defendant]'s prices are not in the middle of the pack in order to be 'in the range.'"  Doc. No. 155 at 29.

As noted above, the tables in Plaintiffs' opposition brief to Defendant's motion for summary judgment are not evidence.  *See Estrella*, 682 F.2d at 819–20.  But even if the Court relies on the tables in Plaintiffs' brief to help understand the evidence upon which the tables are based, Dr. Luna's price comparison and the exhibits upon which Plaintiffs' Tables 1–4 rely upon are not sufficient to create a genuine issue of material fact.  First, Dr. Luna is not a liability expert; she is a damages expert who does not opine on whether Defendant's prices were commercially reasonable.  Doc. No. 122-5 ("Luna Report") at 6 ("For the purposes of my assignment, I am assuming that the Defendants will be found liable for the claims alleged herein and, unless otherwise specified, I offer no opinion regarding Defendants' liability.  My report and analysis focus on Plaintiffs' damages relating to CK's pricing of Mobil brand gasoline to the Plaintiff.").

Next, while the Court has reviewed the Exhibits that seemingly contain pricing

---

[7] The Court notes that, regarding Plaintiffs' Fact 61, Defendant responds, "disputed as written in that the cited evidence does not show an actual calculation and conclusion of ███████ per gallon.  Doc. No. 171-1 ("D. Resp to PSS") at No. 61.

data, Plaintiffs provide no evidence regarding the import of the exhibits.  Understanding and extrapolating information from the data in these exhibits are precisely the realm of the expert: Exhibit 28 is 143 pages of ███████ "price details" emails, Doc. 155-23; Exhibit 31 is 718 pages of OPIS pricing reports, Doc. No. 155-24; and Exhibit 36 is 28 pages of Lundberg Survey reports, Doc. No. 155-27.  The exhibits require expertise to understand their meaning and relevancy to this case; phrases such as "OPIS GROSS CARFG ETHANOL (10%) PRICES WITH CAR COST", "CAP-AT-THE-RACK", and "OPIS GROSS CARB ULTRA LOW SULFUR DISTILLATE PRICES WITH CAR COST" are meaningless without an expert to interpret them, to say nothing of the expertise required to meaningfully analyze years of pricing information contained in hundreds of pages of information.  *See* Doc. No. 155-24 at 2; *see also* Doc. No. 155-27 at 4 (containing columns labeled "unleaded change", "percentage oxygenate" and "vapor pressure").  Moreover, by Plaintiffs' own argument, the ultimate summation of this evidence is that Defendant's prices were not "in the middle of the pack."  *See* Doc. No. 131-1 at 20–24; Doc. No. 155 at 23–30.  But, as noted above, the law does not require Defendant's prices to be "in the middle of the pack."

Based on the foregoing, the Court finds that Plaintiffs have not met their burden of "produc[ing] evidence of [defendant's] competitor's prices in the relevant market" such that there is a genuine issue of material fact as to whether Defendant's prices were "in the range" of prices charged by competitors in the relevant market. *JOC Inc.*, 2013 WL 12159044, at *19 (citations omitted).[8]

---

[8] The Court notes that even if the Court considered the ███████ invoices provided in Exhibit 19 and related Table 5 in Plaintiffs' brief in opposition to Defendant's motion for summary judgment, the outcome would not change.  Exhibit 19 shares the same problem as Exhibit 28, 31, and 36; it is fifty-four (54) pages of years of data without expert evidence purporting to interpret it.  Doc. No. 131-16.  And even viewing these documents in Plaintiffs' favor, they only tend to show that Defendant's prices are higher than one competitor, not that Defendant's price was outside of the range of other prices.

ii.     *Price Discrimination*

Plaintiffs argue that California Business and Professions Code § 21200, "sets forth what constitutes price discrimination."  Doc. No. 155 at 20.  Section 21200 states, in relevant part:

> It is unlawful for any refiner, distributor, manufacturer, or transporter of motor vehicle fuels or oils engaged in business in this state, either directly or indirectly, *to discriminate in price between different purchasers of motor vehicle fuels or oils of like grade and quality*, where the effect of such discrimination is to lessen competition, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customer of either of them.

Cal. Bus. & Professions Code § 21200 (emphasis added).

Plaintiffs urge that price discrimination takes this case outside of the "normal case."  *See* Doc. No. 131-3 at 26–27.  Specifically, Plaintiffs argue Defendant Circle K engaged in price discrimination because Defendant set a "sales price" or transfer price" for its own COOPs that was lower than the price charged to Plaintiffs.  *See id.* at 26.

However, Defendant Circle K presents evidence it never sold gas to its own stations.  In particular, Defendant Circle K provides a Declaration from George Wilkins, "Vice President for Circle K Stores Inc's [ ] West Coast Business Unit which is responsible for Circle K's operations in Southern California, including the operation of Circle K's company operates stores in Southern California."  Doc. No. 119-53 ("Wilkins Decl.") ¶ 2.  In his Declaration, Wilkins states,

> 3.      . . . Circle K sells fuel to dealers and also operates its own company operated ("COOP") stores in Southern California. The COOP stores are not separate entities or companies from Circle K. Rather Circle K operates the COOP stores using its own employees and acquires land either by buying or leasing them from third parties.

> 4.      There are no contracts or leases between Circle K and the COOP stores concerning the purchase and sale of fuel.  Again, Circle K and the COOP

stores are not different entities.  Specifically, Circle K does not sell or transfer fuel to the COOP stores.  Instead, for its retail operations Circle K uses the fuel it buys and then Circle K sells that fuel using its employees at the stations Circle K operates (i.e., the COOP stores).

Wilkins Decl. ¶¶ 3–4.

Plaintiffs offer no evidence to the contrary.  *See* Doc. No. 171-1 ("P. Resp to DSS") at No. 3.[9]  But by the plain language of this statute, there must be "*different purchasers* of motors fuels or oils of like grade and quality."  *See* Cal. Bus. & Prof. Code § 21200 (emphasis added).  Thus, Plaintiffs cannot prevail on this claim because they offer no evidence regarding the prices charged to different purchasers of motor fuels or oils.

### iii.    *Conclusion*

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiffs' cross-motion for partial summary judgment. *See HRN, Inc.*, 144 S.W.3d at 436 (citing *Tom-Lin Enters., Inc.*, 349 F.3d at 281–83; *Havird Oil Co.*, 149 F.3d at 290–91; *Richard Short Oil Co.*, 799 F.2d at 422; *Wayman*, 923 F. Supp. at 1332*; T.A.M., Inc.*, 553 F. Supp. at 509 (E.D. Pa. 1982); *Adams*, 465 S.E.2d at 86) ("Here the Dealers' claim of bad faith appears to be inextricably tied to the amount of the price set by Shell.  We agree with those decisions that have upheld the posted price presumption against similar attacks.  Applying that presumption, these courts have generally rendered judgment as a matter of law on similar claims under

---

[9] In Defendant's Fact 3, Defendant states, "The COOP stores are not separate entities or companies from Circle K.  Rather Circle K operates the COOP stores using its own employees and acquires land either by buying or leasing them from third parties."  DSS at No. 3 (first citing Doc. No. 120-51 ("Wilkins Decl.") ¶¶ 3–4; then citing Doc. No. 148-14 ("Fry Decl.") ¶¶ 6–7)).  Plaintiffs dispute the fact on the basis that it is "Irrelevant. Whether COOP stores are separate entities or not is irrelevant to whether Circle K sets its prices in a commercially reasonable manner, nor does this fact establish that Circle K was not a wholesale distributor of the same fuel that it sold to the Dealers and which Circle K sold at its own company owned and operated stations."  Doc. No. 171-1 ("P. Resp to DSS") at No. 3.  This is not a valid basis for disputing the fact.  The Court therefore treats the statement as undisputed.

section 2-305 where the refiner used a posted price which it fairly applied to similarly-situated purchasers."); *see also Wayman*, 923 F. Supp. at 135 ("So long as this is a 'normal case'--and the court has determined that it is—[the defendant's] 'price in effect' satisfies its good faith obligations under UCC § 2-305(2).").

   *3. Claim 2*

  Defendant moves for summary judgment as to Plaintiffs' Claim 2 for declaratory relief.  Doc. No. 120-1 at 25.  Both parties agree that Claim 2 depends on Claim 1.  *See id.*; Doc. No. 155 at 30.  Accordingly, because the Court has found Defendant is entitled to summary judgment as to Claim 1, the Court **GRANTS** Defendant's motion for summary judgment on Claim 2

   *4. Claim 3*

  Defendant moves for summary judgment as to Plaintiffs' Claim 3 for unfair business practices in violation of California Business and Professions Code § 17200, *et seq.  See* Doc. No. 120-1 at 25–26.  Defendant argues that Plaintiffs' third cause of action "depend[s] upon Plaintiffs being able to establish that they have terminated their contracts 'due to' a material breach of contract by Circle K (here as to its fuel prices)."  Doc. No. 119 at 26.

  In their First Amended Complaint, Plaintiffs allege that "Defendant, ExxonMobil, and each authorized Distributor of ExxonMobil branded gasoline in California have agreed expressly and/or impliedly and conspired among each other, to divide and allocate Dealers selling ExxonMobil branded gasoline among ExxonMobil branded Distributors in California."  FAC ¶ 36.  To the extent Plaintiffs' UCL claim hinges upon Defendant's material breach of contract, the claim must fail as Plaintiffs' only claim for breach of contract (Claim 1) has not survived summary judgment.

  In their opposition to Defendant's motion for summary judgment, Plaintiffs urge that "the facts are in dispute regarding which party or parties need to provide consent before a change of distributor is approved, and since the facts are in dispute regarding policies and statements made to the Dealers when they tried to terminate the Gasoline

Agreements and secure a new distributor, it would be improper to grant partial summary judgement on the unfair business practices claim." Doc. No. 155 at 30–31. However, Plaintiffs present no evidence regarding these purported factual disputes. *See id.* at 30.

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment.

5.    *Defendant's Counterclaim*

Defendant moves for summary judgment on its counterclaim for declaratory relief pursuant to 28 U.S.C. § 2201 against Plaintiffs Windy Cove, Staffing, Mohammad Bahour, Hamid Kalhor, and HB Fuel. *See* Doc. No. 119 at 28 & 28 fn.17; *see also* Doc. No. 116 ¶¶ 69–75. In particular, Defendant seeks a judgment declaring that Circle K is setting its price in good faith. *Id.* ¶ 75. Plaintiffs and Counterclaim-Defendants did not address Defendant's counterclaim in their briefing.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). An actual case or controversy must exist, ripe for determination, and thus lie within the court's jurisdiction under Article III of the Constitution. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). The court must then decide whether to exercise jurisdiction over the dispute. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143–44 (9th Cir. 1994). Here, Plaintiffs and Counterclaim-Defendants do not challenge the reviewability of Defendant's counterclaim. Moreover, the Court finds the contract dispute between the parties to be an actual dispute "that is sufficiently immediate to warrant the issuance of a declaratory judgment," *Principal Life Ins. Co.*, 394 F.3d at 672, and finds it appropriate to entertain Defendant's counterclaim.

The Ninth Circuit determined that "[d]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Federal Sav. & Loan Asso. v.*

*American Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989).  The Court finds those elements have been met here.  Consistent with the above analysis, the Court concludes that there is no genuine issue of material fact as to whether the safe harbor presumption applies. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to its counterclaim and **DECLARES** that, with respect Plaintiffs and Counterclaim-Defendants Windy Cove, Staffing, and HB Fuel and Counterclaim-Defendants Mohammad Bahour and Hamid Kalhor, Circle K has set its pricing in good faith.[10]

## IV. Conclusion

In light of the foregoing, the Court **ORDERS** as follows:

- The Court **GRANTS** Defendant's motion for summary judgment as to Claims 1, 2, and 3, and Counterclaim 1;

- The Court **DENIES** Plaintiffs' motion for partial summary judgment;

- The Court **DENIES** Plaintiffs' *Daubert* motion as to Dr. Umbeck;

- The Court **GRANTS** Defendant's *Daubert* motion as to Mr. Maday;

- The Court **DECLINES** to rule on Defendant's *Daubert* motions as to Dr. Luna and Mr. Boedeker.

- The Court **DIRECTS** the Clerk of Court to enter judgment in Defendant's favor and close this case.

~~The Court further **DIRECTS** the Clerk of Court to file this Order under seal.~~[11] "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access is the starting point*.*" *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  The Court finds that compelling reasons do not justify

---

[10] The Court concludes that, on this record, Defendant is not entitled to summary judgment on its thirty-first affirmative defense and is also not entitled to summary judgment on the additional requests declaratory relief.  *See* Doc. No. 116 ¶¶ 31, 75.

[11] Case participants in this action may access the Order electronically.

maintaining the entirety of the Order under seal. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092 (9th Cir. 2016). ~~Accordingly, the Court will issue a redacted version of the Order.~~

~~To assist the Court in determining the appropriate extent of the redactions, the Court **ORDERS** the parties to submit a joint proposed redacted version of the Order directly to the undersigned's Chambers e-file address, efile_anello@casd.uscourts.gov, no later than **September 21, 2023**. The Court will review the proposed submission and issue a redacted version of this Order shortly thereafter.~~

**IT IS SO ORDERED**.

Dated: September 7, 2023

HON. MICHAEL M. ANELLO
United States District Judge